UNITED STATES (WINTER v.). See Case No. 17,895.

---

## Case No. 16,745.

### UNITED STATES v. WIRT.

[3 Sawy. 161;[1] 20 Int. Rev. Rec. 122; 7 Chi. Leg. News, 26.]

District Court, D. Oregon. Sept. 29, 1874.

INDIANS PRESUMED TO BELONG TO TRIBE—INDIAN SUPERINTENDENTS—ACT ABOLISHING OFFICE—PAYMENT OF SALARY.

1. All Indians born and resident in Oregon are prima facie members of some Oregon tribe, and are therefore under the charge of the superintendent of Indian affairs in Oregon, appointed in pursuance of the act of June 5, 1850 (9 Stat. 437), within the meaning of section 20 of the act of June 30, 1834 (4 Stat. 732), as amended by section 1 of the act of March 16, 1864 (15 Stat. 29).

2. An Indian born in Minnesota is prima facie not a member of an Oregon tribe, though he might become such by adoption.

3. The clause in section 6 of the act of February 17, 1873 (17 Stat. 463), providing for the abolishing of Indian superintendencies after June 30, did not of itself abolish any such superintendency, but only took effect when and as the president designated and appointed.

4. The payment of a superintendent's salary until September 1, 1873, is prima facie evidence that his office was continued until that time, although he was notified that his office was one of those selected under the act to be abolished.

The defendant [A. C. Wirt] was indicted for disposing of spirituous liquor to Indians under the charge of T. B. Odeneal, superintendent of Indian affairs, to wit: Michelle Martineau and William, contrary to section 20 of the trade and intercourse act of June 30, 1834 (4 Stat. 732), as amended by section 1 of the act of March 16, 1864 (15 Stat. 29). The jury found the defendant guilty of disposing of liquor to William as charged in the indictment, and the defendant moved for a new trial.

Rufus Mallory, U. S. Atty.

John F. Caples, for defendant.

DEADY, District Judge. The ground of the motion for new trial is: 1. That the court erred in charging the jury that the Indian William was under the charge of a superintendent of Indian affairs appointed by the United States, on August 2, 1873; and 2.

That the evidence is not sufficient to justify the verdict, because there was no testimony that Indian William was, on the date aforesaid, under the charge of a superintendent of Indian affairs appointed by the United States.

From the evidence it appeared that Martineau was born in Minnesota, of a half-breed Chippewa woman, by a Canadian Frenchman; that on August 2, 1873, and prior thereto, he was living in Clatsop county, and married to a Clatsop Indian woman, and that William was a Clatsop Indian, about 25 years of age, and the step-son of Martineau.

The court charged the jury that any Indian, being a member of any Indian tribe in Oregon, was under the charge of the superintendent of Indian affairs in Oregon, appointed pursuant to section 2 of the act of June 5, 1850 (9 Stat. 437), which authorized the president to appoint such superintendent, "whose duty it shall be to exercise a general superintendence over all Indian tribes in Oregon;" that all Indians born in Oregon are prima facie members of one of such tribes, but that an Indian born in Minnesota was not prima facie a member of any such tribe, although he might possibly become one by adoption, and therefore they ought to acquit the defendant of the charge, so far as the same related to Martineau, irrespective of the question whether he was an Indian within the meaning of that term as used in the intercourse act.

By section 6 of the act of February 18, 1873 (17 Stat. 463), it is provided: "That after June 30, 1873, the offices of four of the superintendents of Indian affairs, and of the clerks of such superintendents, are hereby abolished; * * * and the president may assign the remaining four superintendents to jurisdiction over such agencies as he may deem proper, or, in his discretion, dispense with any, or all, of the said superintendents and their clerks."

At the passage of this act, T. B. Odeneal was superintendent of Indian affairs for Oregon. On June 28, 1873, he received a communication from the department informing him that his superintendency was one of the four selected by the president to be abolished under this act, but he was paid his salary until September 1; and in the meantime received a communication from the commissioner of Indian affairs concerning the selling of liquor to these Clatsop Indians, and was otherwise, during this time, addressed by the inspector of Indian affairs and the department as superintendent.

Upon these facts, the court instructed the jury, as a matter of law, that Indian William was under the charge of Odeneal as superintendent of Indian affairs, on August 2, 1873.

Judicial knowledge extends to the public and private acts of the executive of the United States. The evidence upon this point

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

was therefore addressed to the court and it instructed the jury as to the fact.

Counsel for defendant insists that the office of superintendent for Oregon was abolished after June 30, by operation of the act aforesaid, and that, in any view of the matter, it was then abolished by the action of the president, as shown by the communication received from the department on June 28; therefore the ruling was erroneous and a new trial ought to be granted. ·

The act of congress, although it declares in so many words that "the offices of four of the superintendents * * * are hereby abolished," of itself could not produce that effect, because it does not mention or indicate any particular four superintendents. In the nature of things the act could not take effect as to any particular superintendency until the president so declared. If he had taken no action in the premises, the act would have remained inoperative and without effect, for uncertainty. Until the president gave effect to it by assigning "the remaining four superintendents" to particular "agencies," and thereby impliedly indicating the four whose offices were to be abolished, or until he dispensed "with any or all of said superintendencies," none of them were abolished.

The execution of the act was by its terms committed to the president. If he did not abolish the office in Oregon, Odeneal remained superintendent of Indian affairs. The only question is, was he continued in office until September 1? The payment of his salary until that date is itself prima facie evidence of the fact. It is not to be presumed that his salary was paid for two months after he was out of office. Then, there are the other circumstances pointing to the same conclusion. The motion for new trial is overruled.

[Upon the question of what sentence ought to be imposed upon the defendant he was examined as a witness in his own behalf. The court sentenced him to pay a fine of $100 and the costs, taxed at $146, and one day's imprisonment in the county jail.] [2]

